ADRIENNE C. PUBLICOVER (SBN 161432)
MICHAEL K. BRISBIN (SBN 169495)
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, CA 94105
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendant
**LIFE INSURANCE COMPANY
OF NORTH AMERICA
d.b.a. CIGNA GROUP INSURANCE**

ORIGINAL
FILED

APR 2 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

DEBORAH VENTO,

       Plaintiff,

    v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA d.b.a. CIGNA GROUP
INSURANCE; AND DOES 1 THROUGH 100,

       Defendants.

Case No. 08-02128    JL  ADR

**NOTICE OF REMOVAL OF CIVIL
ACTION TO FEDERAL COURT
UNDER 28 U.S.C. §§ 1332, 1441 AND
1446 (Diversity)**

FAXED

      **PLEASE TAKE NOTICE** that DEFENDANT LIFE INSURANCE COMPANY OF

NORTH AMERICA d.b.a. CIGNA GROUP INSURANCE (hereafter "LINA") herby removes

this action to the United States District Court for the Northern District of California, Oakland

Division, pursuant to 28 U.S.C. sections 1332, 1391, 1441 and 1446 on the grounds that there is

complete diversity of citizenship between Plaintiff DEBORAH VENTO ("VENTO"), who is a

citizen of California and a resident of Alameda County, California, and LIFE INSURANCE

COMPANY OF NORTH AMERICA who is a resident of Pennsylvania, with its principal place

of business in Philadelphia, Pennsylvania.

The amount in controversy exceeds the jurisdictional minimum of $75,000.00 required by Section 1332(a), as the past and future disability benefits at issue total $302,828.40.

I declare, under penalty of perjury, under the laws of the State of California that the foregoing facts are true on the date of filing this Notice of Removal, as more fully set forth below.

1.    On March 25, 2008 Plaintiff VENTO filed in the Superior Court of the State of California, County of Alameda, a civil action entitled *Deborah Vento, Plaintiff v. Life Insurance Company of North America d.b.a. CIGNA Group Insurance and Does 1-100, Defendants,* Case Number RG08372873 ("The Complaint").

2.    The first date upon which DEFENDANT LINA received a copy of the Complaint or notice of the lawsuit was April 2, 2008 when the Complaint was served on DEFENDANT LINA'S agent for service of process in California.   A true, correct, and complete, copy of the summons and complaint served on DEFENDANT'S Agent, plus the Proof of Service, is attached hereto as **Exhibit A**.   Each and every allegation stated in the Complaint is incorporated by reference into this Notice for purposes of removal.

3.    28 U.S.C. Section 1446(b) states, in part, "The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based….."

4.    Thirty days have not passed since service of the Complaint on DEFENDANT LINA'S agent on April 2, 2008 and therefore this matter remains removable to this District Court.

5.    DIVERSITY JURISDICTION:  This is a civil action over which this Court has original jurisdiction under 28 U.S.C. Section 1332, and is one which may be removed to this Court by DEFENDANT LINA pursuant to the provisions of 28 U.S.C. Section 1441(b) in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, as demonstrated by the following:

(a)    The citizenship of the fictitiously named DEFENDANTS identified as DOES 1 through 100 in the Complaint, should be disregarded for the purposes of this removal. *See Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) and 28 U.S.C. Section 1441(a).

(b)    Plaintiff alleges in the Complaint that she is a resident and citizen of California (*See Complaint at paragraph 3*). DEFENDANT LINA is informed and believes, and there on allege, that Plaintiff remains a resident and citizen of the State of California as of the date of this removal filing.

(c)    Defendant LINA is at the time of this filing, and remains, a resident of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

(d)    This Court's jurisdictional minimum, an amount in controversy in excess of $75,000 is satisfied because the Court may, for removal purposes, look to the removal papers for underlying facts establishing the jurisdictional limit. *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir. 1992). A removing defendant must show by a preponderance of the evidence that the plaintiff's claim exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403-404 (9th Cir. 1996).

Plaintiff's lawsuit seeks to recover disability benefits for chronic medical conditions including, but not limited to, degenerative disc syndrome, chronic fatigue syndrome, and fibromyalgia for which plaintiff received disability benefits for 7 plus years (*See Complaint at paragraph 2*). Plaintiff claims entitlement to additional benefits and the policy provides for benefits until age 65 (*See page 7 of the Policy, attached to the Complaint as Exhibit A*). Plaintiff also seeks bad faith and punitive damages (*See Prayer in Complaint*), as well as attorney's fees which will be incurred to obtain the disability benefits (*See, paragraph 19 in Complaint*). If attorney's fees are recoverable by Plaintiff, the fee claim is included in determining the amount in controversy. *Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir. 1982). As clearly seen from above, the combination of claimed disability benefits, other claimed damages, and attorney's fees sought by Plaintiff, taken together, establish that the amount in controversy more than exceeds the jurisdictional minimum of $75,000 as required by

Notice of Removal of Civil Action To Federal Court under 28 U.S.C. §§ 1332, 1441 AND 1446 ³ (Diversity)
Case No.: 334440.1

Section 1332(a). As the damages sought by Plaintiff exceed this Court's jurisdictional limit, and as the parties are of diverse citizenship, removal is proper.

6.      Venue is proper in the Northern District of California, Oakland Division, pursuant to 28 U.S.C. Section 1391(a) (3) because Plaintiff VENTO is subject to personal jurisdiction in Alameda County, which is part of this judicial district. Also, venue is proper under 1441(a) which states, in part, "...any civil action .... may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." Alameda County is within the jurisdiction of the Northern District of California.

7.      Therefore, DEFENDANT LINA files this Notice of Removal of action from the Superior Court of the State of California, County of Alameda, in which it is now pending, to the United States District Court for the Northern District of California, Oakland Division.

8.      True and correct copies of all process, pleadings, orders and documents pertaining to this action (and which have been served upon DEFENDANT LINA, **Exhibit A**, or which were served or filed by DEFENDANT LINA in this action, **Exhibit B**) are attached hereto. DEFENDANT LINA is informed and believes, and thereon alleges, that other than the pleadings attached to this notice of removal, there have been no further pleadings, process, or orders filed in this action or served upon DEFENDANT LINA

9.      A Notice to the State Court and Adverse Party is being simultaneously filed with the Superior Court of the State of California, County of Alameda and will be served on Plaintiff's counsel forthwith.

10.     As required, DEFENDANT LINA will file its responsive pleading no later than 10 days following removal of this action to the United States District Court, Northern District.

///

///

///

///

///

Dated: April 22, 2008          WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
        ADRIENNE C. PUBLICOVER
        MICHAEL K. BRISBIN
        Attorneys for Defendants
        **LIFE INSURANCE COMPANY OF
        NORTH AMERICA
        d.b.a. CIGNA GROUP INSURANCE**

**PROOF OF SERVICE**

I am a citizen of the United States, I am over the age of eighteen years not a party to the within cause; I am employed in the City and County of San Francisco, California and my business address is 525 Market Street, 17th Floor San Francisco, California 94105.

On this date I served the following document(s):

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332, 1441 AND 1446 (Diversity)**

on the party(ies) identified below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

**XX:**    **By First Class Mail** -- I caused each such envelope, with first class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. Mail in San Francisco, California, for collection to the office of the addressee following ordinary business practices.

_____:    **By Personal Service** -- I caused each such envelope to be given to a courier messenger who personally delivered each such envelope to the office of the addressee.

_____:    **By Overnight Courier** -- I caused each such envelope to be given to an overnight mail service at San Francisco, California, to be hand delivered to the office of the addressee on the next business day.

_____:    **Facsimile** -- (Only where permitted. Must consult CCP §1012.5 and California Rules of Court 2001-2011. Also consult FRCP Rule 5(e). Not currently authorized in N.D.CA.)

| | |
|---|---|
| Timothy J. Fricker, Esq.<br>James G. Mellen, Esq.<br>Fricker & Mellen & Associates<br>Tribune Tower<br>409 13th Street, 17th Floor<br>Oakland, CA 94612<br>Tel: (510) 663-8484<br>Fax: (510) 663-0639<br>*Attorneys for Plaintiff*<br>*DEBORAH VENTO* | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

EXECUTED April 24, 2008, at San Francisco, California.

_____
Joya Yeung

# EXHIBIT A

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/02/2008
CT Log Number 513266379

**TO:**    Michael A James
Cigna Companies
TL21A, Two Liberty Place
1601 Chestnut Street
Philadelphia, PA 19192

*not pre-lit*

Received

APR 3 2008

Michael James

**RE:**    **Process Served in California**

**FOR:**    Life Insurance Company of North America (Domestic State: PA)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **TITLE OF ACTION:** | Deborah Vento, Pltf. vs. Life Insurance Company of North America, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Notice and Acknowledgement of Receipt, Summons, First Amended Complaint, Attachment(s) |
| **COURT/AGENCY:** | Alameda County, Oakland, Superior Court, CA |
| | Case # RG08372873 |
| **NATURE OF ACTION:** | Insurance Litigation - Breach of duty of good faith and fair dealing - Refused to approve continuation of Ms. vento's claim for disability benefits |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 04/02/2008 postmarked on 03/26/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days from date of mailing dated [3/26/08] - Complete acknowledgment form and return // Within 30 days after service - file an answer |
| **ATTORNEY(S) / SENDER(S):** | Timothy J. Fricker, SBN |
| | Fricker & Mellen & Associates |
| | Tribune Tower |
| | 409 13th Street |
| | 17th Floor |
| | Oakland, CA 94612 |
| | 510 663 8484 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight , 790975329545 |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street |
| | Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of 1 / JC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Timothy J. Fricker, SBN 183309<br>~~Fricker¢ Mellen~~<br>Tribune Tower<br>409-13th Street, 17th Floor<br>Oakland, CA  94612<br>TELEPHONE NO. (510) 663-8484    FAX NO. *(Optional)*<br>E-MAIL ADDRESS *(Optional)*<br>ATTORNEY FOR *(Name)* Deborah Vento | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA  94612
BRANCH NAME:

PLAINTIFF/PETITIONER: Deborah Vento

DEFENDANT/RESPONDENT: Insurance Company of North America, does 1-100

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>RG 08372873 |
|---|---|

TO *(insert name of party being served):* Life Insurance Company of North America

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 3/26/08

~~Timothy Fricker~~ Karen Creech
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. ☒  A copy of the summons and of the complaint.
2. ☒  Other *(specify):* Self addressed stamped envelope
    Insurance policy

*(To be completed by recipient):*

Date this form is signed:

_____          _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LIFE INSURANCE COMPANY OF NORTH AMERICA,
dba CIGNA GROUP INSURANCE, DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DEBORAH VENTO

FE FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
FILED
ALAMEDA COUNTY
MAR 25 2008
CLERK OF THE SUPERIOR COURT

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.   Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.   Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Alameda<br>1225 Fallon Street<br>Oakland, CA  94612 | **CASE NUMBER:**<br>*(Número del Caso):* RG08372873 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Fricker & Mellen & Associates, Tribune Tower, 409 13th Street, 17th Floor, Oakland, CA 94612

| DATE:                    Pat S. Sweeten | Clerk, by        E BAKER | Deputy |
|---|---|---|
| *(Fecha)* MAR 2 5 2008 | *(Secretario)* Executive Officer/Clerk of the Superior | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc. \| www.USCourtForms.com |
|---|---|---|

1    Fricker & Mellen & Associates
     Timothy J. Fricker, Esq. 183309
2    James G. Mellen, Esq. 122035
     Tribune Tower
3    409 13th Street, 17th Floor
     Oakland, CA 94612
4    Tel: (510) 663-8484
     Fax: (510) 663-0639
5
     Attorneys for Plaintiff
6    Deborah Vento

7

8                  SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9                        FOR THE COUNTY OF ALAMEDA

10

11    DEBORAH VENTO,                          Case No.: *RG08312075*

12              Plaintiff,                     FIRST AMENDED COMPLAINT AND
                                               JURY DEMAND
13         vs.
                                               1)Breach of the Duty of Good Faith and
14    LIFE INSURANCE COMPANY OF                Fair Dealing;
      NORTH AMERICA, d.b.a. CIGNA
15    GROUP INSURANCE; DOES 1                  2) Breach of Contract
      THROUGH 100,
16
                Defendants
17

18   Plaintiff alleges as follows:

19                          GENERAL ALLEGATIONS

20                              Introduction

21        1. On or about June 21, 1999, Plaintiff, DEBORAH VENTO ("MS. VENTO")

22   became disabled under a long-term disability policy through her employer, the City of

23   Menlo Park, a governmental entity.

24        2. MS. VENTO, who has been diagnosed with Degenerative Disc Syndrome,

25   Chronic Fatigue Syndrome, and Firbromyalgia, timely filed a claim for disability benefits.

26   On August 30, 1999, LIFE INSURANCE COMPANY OF NORTH AMERICA, d.b.a.

27

28                              Page 1

CIGNA GROUP INSURANCE ("LINA") agreed that MS. VENTO was disabled under the terms of the Long Term Disability Policy and began disability payments to MS. VENTO under the Policy.  However, on or about December 18, 2006, LINA terminated MS. VENTO's benefit payments to which she was entitled under the terms of the Long Term Disability Policy.  On, or about November 8, 2007, LINA unreasonably denied MS. VENTO's appeal of the termination of her Long Term Disability Benefit payments and refused to continue to pay her claim for benefits.

<u>Factual Allegations</u>

3. Plaintiff is, and at all relevant times was, a resident and citizen of the State of California.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA, d.b.a. CIGNA GROUP INSURANCE , is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania and authorized to transact and transacting the business of insurance in this state.

5. The true names of capacities, whether individual, corporate, associate, or otherwise, of Defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and on such information and belief alleges that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

6. At all relevant times, Defendants, and each of them, were the agents and employees of each of the remaining Defendants, and were at all times acting within the purpose and scope of said agency and employment, and each Defendant has ratified and approved the acts of her agent.

7. At all relevant times herein, MS. VENTO was covered under Long Term Disability Policy, Number BK020024. This policy was issued by LINA to The City of Menlo Park, a governmental agency and MS. VENTO's employer at the time she became disabled (the "Policy"). A copy of the Policy is attached hereto as Exhibit "A".

8. At all relevant times herein, all premiums due under the Policy have been paid and Plaintiff has performed all her obligations under the Policy.

9. On or about June 21, 1999, MS. VENTO became disabled under the terms of the Policy. On or about August 30, 1999, LINA approved the payments of Long Term Disability benefits to MS. VENTO.

10. On or about January 8, 2007, LINA informed MS. VENTO that as of December 18, 2006, it had terminated her long term disability benefits under the Policy.

11. On or about August 16, 2007, Doctor Lorraine Page, a Board Certified Family Practitioner, confirmed that MS. VENTO continues to suffer from Fibromyalgia, Chronic Fatigue, and Degenerative Disc Syndrome of her cervical and lumbar spine, and is unable to maintain any full-time employment of any kind.

12. Yet, dismissing medical opinion that substantiated and confirmed her disability, on or about November 8, 2007, LINA denied MS. VENTO's appeal and continued to fail to pay the claim.

13. At the time of filing this complaint, LINA has refused and continues to refuse to approve continuation of MS. VENTO's claim for disability benefits.

14. Plaintiff has been, and remains, disabled under the terms of the subject Policy, to date, LINA has unreasonably failed and refused to pay Plaintiff the benefits to which she is entitled.

PLAINTIFF, DEBORAH VENTO, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, LIFE INSURANCE COMPANY OF NORTH AMERICA, d.b.a. CIGNA GROUP INSURANCE; and DOES 1 through 13, inclusive, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGES:

15. Plaintiff refers to each and every paragraph of the General Allegations and incorporates those paragraphs as though set forth in full in this cause of action.

16. Defendants, and each of them, have breached their duty of good faith and fair dealing owed to Plaintiff in the following respects:

Unreasonably failing to make payments to Plaintiff at a time when Defendants know that Plaintiff was entitled to the payments under the terms of the Policy.

Unreasonably delaying payments to Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

Unreasonably withholding payments from Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

Unreasonably misrepresenting to Plaintiff pertinent facts and insurance Policy provisions relating to the coverage in issue.

Failing to reasonably and promptly investigate and process Plaintiff's claim for benefits.

Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim for benefits in which liability has become reasonably clear.

Failing to promptly provide a reasonable explanation of the basis relied upon in the Policy, in relation to the applicable facts, for the denial of Plaintiff's claim for benefits.

Plaintiff is informed and believes and thereon alleges that Defendant has breached its duty of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

17. As a proximate result of the aforementioned unreasonable conduct of Defendants, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total

1   amount to be shown at the time of trial.

2       18. As a further proximate result of the aforementioned unreasonable conduct of

3   Defendants, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to

4   Plaintiff's general damage in a sum to be determined at the time of trial.

5       19. As a further proximate result of the unreasonable conduct of Defendants, Plaintiff

6   was compelled to retain legal counsel to obtain the benefits due under the Policy.

7   Therefore, Defendants are liable to Plaintiff for those attorneys' fees, witness fees and costs

8   of litigation reasonably necessary and incurred by Plaintiff in order to obtain the Policy

9   benefits in a sum to be determined at the time of trial.

10      20. Defendants' conduct described herein was intended by Defendants to cause

11  injury to Plaintiff or was despicable conduct carried on by the Defendants with a willful and

12  conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust

13  hardship in conscious disregard of Plaintiff's rights, or was an intentional misrepresentation,

14  deceit, or concealment of a material fact known to the Defendants with the intention to

15  deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute

16  malice, oppression or fraud under California Civil Code §3294, thereby entitling Plaintiff to

17  punitive damages in an amount appropriate to punish or set an example of Defendants.

18      21. Defendants' conduct was highly reprehensible because (1) it caused plaintiff not

19  only substantial economic loss, but also personal physical injury and physical sickness; (2) it

20  demonstrated defendants' indifference and reckless disregard as to the health and safety of

21  Plaintiff; (3) it was repeated and continuous, rather than just an isolated incident; (4) it

22  caused harm to plaintiffs not by accident, but rather by defendants' intentional malice,

23  trickery, and deceit; and (5) plaintiff was financial vulnerable to Defendants' conduct.

24      22. Defendants' conduct described herein was undertaken by the corporate

25  Defendant's deputies or managing agents, identified herein as DOES 1 through 100, who

26  were responsible for claims supervision and operations, underwriting, communications

27  and/or decisions. The aforedescribed conduct of said managing agents and individuals was

28                                    Page 5

therefore undertaken on behalf of the corporate Defendants. Said corporate Defendants further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by managing agents whose precise identities are unknown to Plaintiff at this time are therefore identified and designated herein as DOES 1 through 10, inclusive.

PLAINTIFF, DEBORAH VENTO, FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS, LIFE INSURANCE COMPANY OF NORTH AMERICA, d.b.a. CIGNA GROUP INSURANCE; and DOES 1 through 10, inclusive, FOR BREACH OF CONTRACT, ALLEGES:

23. Plaintiff refers to each and every paragraph of the General Allegations and incorporates those paragraphs as though set forth in full in this cause of action.

24. Defendants, and each of them, owed duties and obligations to Plaintiff under the Policy.

25. Defendants, and each of them, breached the terms and provisions of the insurance Policy by failing and refusing to pay benefits under the Policy as set forth in the second paragraph of the First Cause of Action, incorporated herein by referenced.

26. As a direct and proximate result of Defendants' conduct and breach of their contractual obligations, Plaintiff has suffered damages under the Policy in an amount to be determined according to proof at the time of trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

AS TO THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS, LIFE INSURANCE COMPANY OF NORTH AMERICA, d.b.a. CIGNA GROUP INSURANCE; and DOES 1 through 10, inclusive, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING:

27. Damages for failure to provide benefits under the Policy, plus interest, including prejudgment interest, and other economic and consequential damages, in a sum to be

1 determined at the time of trial:

2     28. General damages for mental and emotional distress in a sum to be determined at

3 the time of trial;

4     For attorneys' fees, witness fees and costs of litigation incurred by Plaintiff to obtain

5 the Policy's benefits in an amount to be determined at the time of trial;

6     Punitive and exemplary damages in an amount appropriate to punish or set an

7 example of Defendants;

8     For costs of suit incurred herein; and,

9     For such other and further relief as the Court deems just and proper.

10     AS TO THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS, LIFE

11 INSURANCE COMPANY OF NORTH AMERICA, d.b.a. CIGNA GROUP INSURANCE; and

12 DOES 1 through 10, inclusive, FOR BREACH OF CONTRACT:

13     Damages under the Policy in an amount to be determined according to proof at the

14 time of trial;

15     For costs of suit incurred herein; and,

16     For such other and further relief as the Court deems just and proper.

17 DATED: March 13, 2008

18

19                          Attorneys for Plaintiff

20

21                     **DEMAND FOR JURY TRIAL**

22

23     Plaintiff hereby demands a trial by jury.

24

25

26                          Attorneys for Plaintiff

27

28                          Page 7

LIFE INSURANCE COMPANY OF NORTH AMERICA
1601 CHESTNUT STREET, PHILADELPHIA, PA  19192-2235    GROUP POLICY
215-761-1000
A STOCK INSURANCE COMPANY

| | |
|---|---|
| **POLICYHOLDER:** | CITY OF MENLO PARK |
| **POLICY NUMBER:** | BK 020024 |
| **POLICY EFFECTIVE DATE:** | April 1, 1996 |
| **POLICY ANNIVERSARY DATE:** | April 1 |

This Policy describes the terms and conditions of coverage.  The Policy is issued in California and shall be governed by its laws.  The Policy goes into effect on the Policy Effective Date, 12:01 AM at the Policyholder's address.

The Insurance Company and the Policyholder have agreed to all the terms of this Policy.

George D. Mulligan, Secretary

John K. Leonard, President

TL-004700

TABLE OF CONTENTS

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ELIGIBILITY FOR INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

EFFECTIVE DATE OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

TERMINATION OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

CONTINUATION OF INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

SCHEDULE OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

SCHEDULE OF BENEFITS FOR CLASS 1 . . . . . . . . . . . . . . . . . . . . . . . . . .  5

DESCRIPTION OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

CLAIM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

ADMINISTRATIVE PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

### Active Service
An Employee will be considered in Active Service with the Employer on a day which is one of the Employer's scheduled work days if either of the following conditions are met.
1.    He or she is actively at work. This means the Employee is performing his or her regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires the Employee to travel.
2.    The day is a scheduled holiday, vacation day or period of Employer approved paid leave of absence.

An Employee is considered in Active Service on a day which is not one of the Employer's scheduled work days only if he or she was in Active Service on the preceding scheduled work day.

### Consumer Price Index (CPI-W)
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

### Employee
For eligibility purposes, an Employee is an employee of the Employer in one of the "Classes of Eligible Employees." Otherwise, Employee means an employee of the Employer who is covered under the Policy.

### Employer
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is the agent of the Employee for transactions relating to this insurance. The actions of the Employer shall not be considered actions of the Insurance Company.

### Full-time
Full-time means the number of hours set by the Employer as a regular work day for Employees in the Employee's eligibility class.

### Injury
The term Injury means an accidental loss or bodily harm.

### Insurability Requirement
An Employee will satisfy the Insurability Requirement on the day the Insurance Company agrees in writing to accept the Employee as covered under the Policy. To determine an Employee's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense.

### Insurance Company
The Insurance Company underwriting the Policy is named on the Policy cover page.

1

## Physician

Physician means a licensed doctor practicing within the scope of his or her license and rendering care and treatment to an Employee that is appropriate for the condition and locality. The term does not include an Employee, an Employee's spouse, the immediate family (including parents, children, siblings or spouses of any of the foregoing, whether the relationship derives from blood or marriage), of an Employee or spouse, or a person living in an Employee's household.

## Prior Plan

The Prior Plan refers to the plan of disability insurance providing similar benefits sponsored by the Employer in effect directly prior to the Policy Effective Date.

## Sickness

The term Sickness means a physical or mental illness.

TL-004708

# ELIGIBILITY FOR INSURANCE

An Employee in one of the Classes of Eligible Employees shown in the Schedule of Benefits is eligible to be insured on the Policy Effective Date, or the day after he or she completes the Eligibility Waiting Period, if later.

Except as noted in the Reinstatement Provision, if an Employee terminates coverage and later wishes to reapply, or if a former Employee is rehired, a new Eligibility Waiting Period must be satisfied. An Employee is not required to satisfy a new Eligibility Waiting Period, if insurance ends because he or she is no longer in a Class of Eligible Employees, but continues to be employed and within one year becomes a member of an eligible class.

TL-004710

# EFFECTIVE DATE OF INSURANCE

Insurance for an eligible Employee is effective on the date he or she becomes eligible if an Employee is not required to contribute to the cost of this coverage.

If an Employee is not actively at work on the date insurance would otherwise be effective, it will be effective on the date he or she returns to any occupation for the Employer on a Full-time basis.

TL-004712

# TERMINATION OF INSURANCE

The insurance on an Employee will end on the earliest date below.
1.    the date the Employee is eligible for coverage under a plan intended to replace this coverage
2.    the date the Policy is terminated
3.    the date the Employee is no longer in an eligible class

2

4.      the day after the period for which premiums are paid
5.      the date the Employee is no longer in Active Service

TL-004714

## CONTINUATION OF INSURANCE

Insurance continues if an Employee's Active Service ends due to a Disability for which benefits under the Policy are or may become payable. Premiums for the Employee will be waived while Disability Benefits are payable. If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, if earlier.

TL-004716

3

## SCHEDULE OF BENEFITS

Premium Due Date                 Premiums are due in arrears on the date coinciding with
                                 the day of the Policy Anniversary Date or the last day of
                                 the month, if earlier.

Participation Requirements       100% of Eligible Employees, but not less than 15
                                 Employees.

## Classes of Eligible Employees

Class 1          All active Full-time Employees of the Policyholder, excluding Council
                 Members, working a minimum of 20 hours per week.

The following pages contain a Schedule of Benefits for each Class of Eligible Employees.  For
an explanation of these benefits, please see the Description of Benefits provision.

4

SCHEDULE OF BENEFITS FOR CLASS 1

Eligibility Waiting Period

The Eligibility Waiting Period is the period of time the Employee must be in Active Service to be eligible for coverage. It will be extended by the number of days the Employee is not in Active Service.

For Employees hired on or before the Policy Effective Date:        No Waiting Period

For Employees hired after the Policy Effective Date:        No Waiting Period

**Definition of Disability**

An Employee is Disabled if, because of Injury or Sickness,
1.    he or she is unable to perform all the material duties of his or her regular occupation; and
2.    after Monthly Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.

An Employee is Residually Disabled if, during the Benefit Waiting Period and while Disability Benefits are payable, he or she is Disabled but returns to his or her regular occupation on a part-time basis or any other occupation on a Full-time or part-time basis.

**Definition of Covered Earnings**

Covered Earnings means an Employee's annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins. It does not include amounts received as bonus, commissions, overtime pay or other extra compensation.

Any increase in an Employee's Covered Earnings will not be effective during a period of continuous Disability.

*Indexed Covered Earnings*

For the first 12 months Monthly Benefits are payable, Indexed Covered Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable, Indexed Covered Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
1.    10% of the Employee's Indexed Covered Earnings during the preceding year of Disability; or
2.    the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

**Benefit Waiting Period**

The Benefit Waiting Period is the period of time an Employee must be continuously Disabled before Disability Benefits may be payable.

5

*For Monthly Benefits*                    90 days

A period of Disability is continuous even if the Employee can return to Active Service for up to 15 days during the Benefit Waiting Period.  The Benefit Waiting Period will be extended by the number of days the Employee can return to Active Service.

## Amounts of Insurance

*Monthly Benefits*                    The lesser of 66.67% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $6 000  reduced by any Other Income Benefits.

*Work Incentive Benefits*

The Monthly Benefit for any month an Employee is Residually Disabled is determined as follows.

For the first 12 months the Disabled Employee returns to work, the Monthly Benefit is as figured above.  If, for any month during this period, the sum of the Disabled Employee's Monthly Benefit, current earnings and any additional Other Income Benefits exceed 100% of his or her monthly Indexed Covered Earnings, the Monthly Benefit will be reduced by the excess amount.

After 12 months, the Monthly Benefit is as figured above, reduced by 50% of the Disabled Employee's current earnings received during any month he or she returns to work.  If the sum of the Monthly Benefit, current earnings and any additional Other Income Benefits exceeds 80% of his or her monthly Indexed Covered Earnings, the Monthly Benefit will be reduced by the excess amount.

Current earnings include any wage or salary for work performed while Disability Benefits are payable.  If an Employee is working for another employer on a regular basis when Disability begins, current earnings will include any increase in the amount he or she earned from this work during the period for which Disability Benefits are payable.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that an Employee receives on his or her own behalf or for dependents, or which the Employee's dependents receive because of the Employee's entitlement to Other Income Benefits.

*Minimum Monthly Benefit*          The greater of $100 or 10% of an Employee's  Monthly Benefit prior to any reductions for Other Income Benefits.

The Insurance Company will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits.  However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

## Additional Benefits

*Rehabilitation During Disability*    Please refer to the Description of Benefits for an explanation of this benefit.

*Reasonable Accommodation Benefit*    Please refer to the Description of Benefits for an explanation of this benefit.

*Conversion Privilege*    Please refer to the Description of Benefits for an explanation of this benefit.

*Survivor Benefit*
    Benefit Waiting Period    After 6 Monthly Benefits are payable.
    Amount of Benefit    100% of the sum of the last full Monthly Benefit plus any current earnings by which the Monthly Benefit was reduced for that month.
    Maximum Benefit Period    6 monthly payments.

## Maximum Benefit Period

*For Monthly Benefits*

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | The Employee's 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

## Initial Premium Rates

$.870 per $100 of Covered Payroll

Covered Payroll for an Employee will mean his or her monthly earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $9,000.

TL-004774

7

## DESCRIPTION OF BENEFITS

The following provisions explain the benefits available under the Policy. Please see the Schedule of Benefits for the applicability of these benefits on a class level.

### Disability Benefits

The Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy. A Disabled Employee must satisfy the Benefit Waiting Period and be under the appropriate care of a Physician. Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid.

The Insurance Company will require continued proof of the Employee's Disability, provided at the Employee's expense, for benefits to continue.

### Benefit Waiting Period

The Benefit Waiting Period is shown in the Schedule of Benefits.

The Insurance Company will waive the Benefit Waiting Period for an Employee if benefits under a Prior Plan were payable on the Policy Effective Date and the Employee returns to Active Service within 6 months after that date. The return to Active Service must be for more than 14 consecutive days but less than 6 months. The later Disability must be caused by the same or related causes.

### Termination of Disability Benefits

Disability Benefits will end on the earliest of the following dates.
1.      the date an Employee earns more than 80% of his or her Covered Earnings
2.      the date an Employee returns to Active Service
3.      the date the Insurance Company determines an Employee is not Disabled
4.      the end of the Maximum Benefit Period
5.      the date an Employee dies

### Successive Periods of Disability

Once an Employee is eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability unless the Employee can return to Active Service for 6 or more consecutive months.

A period of Disability is not continuous if:
1.      separate periods of Disability result from unrelated causes; or
2.      the later Disability occurs after coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if an Employee is eligible for coverage under a plan that replaces this Policy.

### Mental Illness, Alcoholism and Drug Abuse Limitation

The Insurance Company will pay Monthly Benefits on a limited basis for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 Monthly

8

Benefits have been paid. no further benefits will be payable for any of the following conditions.

1. Alcoholism
2. Anxiety disorders
3. Bipolar affective disorder (manic depressive syndrome)
4. Delusional (paranoid) disorders
5. Depressive disorders
6. Drug addiction or abuse
7. Eating disorders
8. Mental Illness
9. Psychotic disorders
10. Schizophrenia
11. Somatoform disorders (psychosomatic illness)

If, before reaching the lifetime maximum benefit, an Employee is confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime maximum benefit. The confinement must be for the care or treatment of any of the conditions listed above.

**Pre-Existing Condition Limitation**

The Insurance Company will not pay Monthly Benefits for any period of Disability caused by or contributed to by, or resulting from, a Pre-Existing Condition. A "pre-existing condition" means any Injury or Sickness for which the Employee incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or consulted a physician within 3 months before his or her most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits. It will not apply to a period of Disability that begins after an Employee is in Active Service for at least 12 months after his or her most recent effective date of insurance or the effective date of any added or increased benefits.

Except for any amount of benefit in excess of a Prior Plan's benefits, the Pre-Existing Condition Limitation will not apply to an Employee covered under a Prior Plan who satisfied the pre-existing condition limitation, if any, under that plan. If an Employee, covered under a Prior Plan, did not fully satisfy the pre-existing condition limitation of that plan, credit will be given for any time that was satisfied.

Time will not be credited for any day an Employee is not actively at work. The Pre-Existing Condition Limitation will be extended by the number of days the Employee is not in Active Service.

**Disability Benefit Calculation**

The Monthly Benefit for any month Disability Benefits are payable is shown in the Schedule of Benefits. Monthly Benefits are based on a 30 day period. They will be prorated if payable for any period less than a month.

## Work Incentive Benefit

If an Employee is covered for Work Incentive Benefits, he or she may return to work while Disabled and Disability Benefits will continue. The conditions under which an Employee may return to work and the amount of this benefit is shown in the Schedule of Benefits.

The Insurance Company will review the Employee's status and will require satisfactory proof of earnings and continued Disability.

## Other Income Benefits

While an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits. The extent to which Other Income Benefits will reduce any Disability Benefits payable under the Policy is shown in the Schedule of Benefits.

Other Income Benefits include:

1. any amounts which the Employee or any dependents, if applicable, receive (or are assumed to receive*) under:
   a. the Canada and Quebec Pension Plans;
   b. the Railroad Retirement Act;
   c. any local, state, provincial or federal government disability or retirement plan or law;
   d. any sick leave or salary continuation plan of the Employer;
   e. any work loss provision in "No-Fault" auto insurance;
   f. any Disability Benefits received from the Veterans' Administration;
   g. any workers' compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2. any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive*) on the Employee's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive*) because of the Employee's entitlement to such benefits.

3. any retirement plan benefits funded by the Employer. "Retirement plan" means any defined benefit or defined contribution plan sponsored or funded by an employer. It does not include an individual deferred compensation agreement; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

4. any proceeds payable under any franchise or group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

5.      any wage or salary for work performed. If an Employee is covered for Work Incentive Benefits, the Insurance Company will only reduce Disability Benefits to the extent provided under the Work Incentive Benefit in the Schedule of Benefits.

Dependents include any person who receives (or is assumed to receive) benefits under any applicable law on account of an Employee's entitlement to benefits.

    * See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

After the first deduction for any Other Income Benefit (except wage or salary) is made, benefits will not be further reduced during that period of Disability due to any cost of living increase in that Other Income Benefit.

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given.  If no time is stated the lump sum will be prorated monthly over a five year period.  The Insurance Company will determine the expected duration of disability.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them. These assumed benefits will be the amount the Insurance Company estimates the Employee (or his or her dependents, if applicable) may be eligible to receive.  Disability Benefits will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage or salary for work performed while Disability Benefits are payable, this assumption will not be made if the Employee gives the Insurance Company proof of the following events.
1.      Application was made for these benefits
2.      A Reimbursement Agreement is signed
3.      Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful
4.      Payments were denied

The Insurance Company will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.

*Social Security Assistance*

The Insurance Company will, at its discretion, assist the Employee in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by the assumed receipt of SSDI benefits while the Employee participates in the Social Security Assistance Program.

The Insurance Company may require the Employee to file an appeal if it believes a reversal of a prior decision is possible. If the Employee refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee gives us proof that all administrative remedies are exhausted.

## Recovery of Overpayment

If benefits are overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods.
1.     A request for lump sum payment of the overpaid amount
2.     A reduction of any amounts payable under the Policy

If there is an overpayment due when an Employee dies, any benefits payable under the Policy will be reduced to recover the overpayment.

TL-004771

## ADDITIONAL BENEFITS

## Rehabilitation During A Period of Disability

If, while an Employee is Disabled, the Insurance Company determines that he or she is a suitable candidate for rehabilitation they may participate in a Rehabilitation Plan. The terms and conditions of the Rehabilitation Plan must be mutually agreed upon by the Employee and the Insurance Company.

The Rehabilitation Plan may, at the Insurance Company's discretion, allow for payment of the Employee's medical expense, education expense, moving expense, accommodation expense or family care expense while he or she participates in the program.

A "Rehabilitation Plan" is a written agreement between the Employee and the Insurance Company in which the Insurance Company agrees to provide, arrange or authorize vocational or physical rehabilitation services.

## Reasonable Accommodation Benefit

The Insurance Company may reimburse the Employer for expenses incurred in making a Reasonable Accommodation. For the Employer to be eligible for this benefit, the Reasonable Accommodation must meet the following conditions.
1.     It must be made on behalf of a Disabled Employee and result in his or her ability to return to any occupation for the Employer.
2.     It must be approved by the Insurance Company in writing before it is implemented or any expense is incurred.

3.    It must meet federal standards of a Reasonable Accommodation as detailed in the Americans with Disabilities Act of 1991 and any later amendments.

"Reasonable Accommodation" means any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for a person with a disability to perform the material duties of any occupation without causing undue hardship to the Employer.

TL-005107

## Conversion Privilege

If an Employee's insurance ends because employment with the Employer ends, or an Employee is laid off or on an uninsured leave of absence, he or she may be eligible for long term disability conversion insurance.

To be eligible, an Employee must have been insured for Disability Benefits and actively at work for at least 12 months.  An Employee must apply for conversion insurance within 62 days after insurance ends.

The benefits of the conversion plan will be those benefits offered at the time an Employee applies.  The premium will be based on the rates in effect for conversion plans at that time.

Conversion insurance is not available if any of the following conditions apply.
1.    An Employee is no longer in a Class of Eligible Employees, but is still employed by the Employer.
2.    The Employee is on an uninsured leave of absence.
3.    An Employee is retired or age 70 or older.
4.    An Employee is not in Active Service because of Disability.
5.    The Policy is canceled for any reason.

TL-005100

## Survivor Benefit

The Insurance Company will pay a Survivor Benefit if an Employee dies while Monthly Benefits are payable.  The Employee must have been continuously Disabled for the Survivor Benefit Waiting Period before the first benefit is payable.  These benefits will be payable for the Maximum Benefit Period for Survivor Benefits.

Benefits will be paid to the Employee's Spouse.  If there is no Spouse, benefits will be paid in equal shares to the Employee's surviving Children.  If there are no Spouse and no Children, benefits will be paid to the Employee's estate.

"Spouse" means an Employee's lawful spouse.  "Children" means an Employee's unmarried children under age 21 who are chiefly dependent upon the Employee for support and maintenance.  The term includes a stepchild living with the Employee at the time of his or her death.

TL-005109

## EXCLUSIONS

Disability Benefits are not payable while an Employee is incarcerated for any reason in a penal or corrections institution. Nor will they be paid while an Employee is serving on full-time active duty in any armed forces. If the Employee sends proof of military service the Insurance Company will refund the portion of the premium paid to cover the Employee during a period of such service.

The Insurance Company will not pay Disability Benefits for a Disability that results, directly or indirectly, from any of the following:

1.    attempted suicide, or whenever an Employee injures himself or herself on purpose.
2.    war or any act of war, whether or not declared.
3.    terrorism or active participation in a riot.
4.    commission of a felony.
5.    the revocation, restriction or non-renewal of an Employee's license, permit or certification necessary to perform the duties of his or her occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

TL-004772

## CLAIM PROVISIONS

**Notice of Claim**
Written notice must be given to the Insurance Company within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice is not given in that time, the claim will not be invalidated or reduced if it is shown that written notice was given as soon as was reasonably possible. Written notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Written notice should include the Policyholder's name and Policy Number and the claimant's name and address.

**Claim Forms**
When the Insurance Company receives written notice of claim, it will send claim forms for filing proof of loss. If claim forms are not sent within 15 days after notice is received by the Insurance Company, the proof requirements will be met by submitting, within the time required under "Proof of Loss" section, written proof of the nature and extent of the loss.

**Claimant Cooperation Provision**
Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

**Insurance Data**
The Employer is required to cooperate with the Insurance Company in the review of claims and applications for coverage. Any information the Insurance Company provides in these areas is confidential and may not be used or released by the Employer if not permitted by applicable privacy laws.

**Proof of Loss**

Written proof of loss must be given to the Insurance Company within 90 days after the date of the loss for which a claim is made. If written proof of loss is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof of loss was given as soon as was reasonably possible. In any case, written proof must be given not more than a year after the time it is otherwise required, except if proof is not given solely due to the lack of legal capacity.

Within 30 days of a request, written proof of continued Disability and of regular attendance of a Physician must be given to the Insurance Company.

**Time of Payment**

Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which the Insurance Company is liable, will be paid at that time.

**To Whom Payable**

Disability Benefits will be paid to the Employee. If any person to whom benefits are payable is a minor or, in the opinion of the Insurance Company, is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, the Insurance Company, may at its option, make payment to the person or institution appearing to have assumed custody and support.

If an Employee dies while any Disability Benefits remain unpaid, the Insurance Company may, at its option, make direct payment to any of the following living relatives of the Employee: spouse, mother, father, children, brothers or sisters; or to the executors or administrators of the Employee's estate. The Insurance Company may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Insurance Company from all liability for any payment made.

**Physical Examination and Autopsy**

The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.

**Legal Actions**

No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time written proof of loss must be furnished.

**Time Limitations**

If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which the Employee lives when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Physician/Patient Relationship**
The Employee will have the right to choose any Physician who is practicing legally. The Insurance Company will in no way disturb the Physician/patient relationship.

TL-004724

## ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Changes in Premium Rates**
The premium rates may be changed by the Insurance Company from time to time with at least 31 days advance written notice. No change in rates will be made until 24 months after the Policy Effective Date. An increase in rates will not be made more often than once in a 12 month period. However, the Insurance Company reserves the right to change the rates at any time if any of the following events take place.
1.    The terms of the Policy change
2.    A division, subsidiary, affiliated company or eligible class is added or deleted from the Policy
3.    There is a change in the factors bearing on the risk assumed
4.    Any federal or state law or regulation is amended to the extent it affects the Insurance Company's benefit obligation

If an increase or decrease in rates takes place on a date that is not a Premium Due Date, a pro rata adjustment will apply from the date of the change to the next Premium Due Date.

**Reporting Requirements**
The Employer must, upon request, give the Insurance Company any information required to determine who is insured, the amount of insurance in force and any other information needed to administer the plan of insurance.

**Payment of Premium**
The first premium is due on the Policy Effective Date. After that, premiums will be due monthly unless the Policyholder and the Insurance Company agree on some other method of premium payment.

If any premium is not paid when due, the Policy will be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

**Notice of Cancellation**
The Policyholder or the Insurance Company may cancel the Policy as of any Premium Due Date by giving 31 days advance written notice. If a premium is not paid when due, the Policy will automatically be canceled as of the Premium Due Date, except as provided in the Policy Grace Period section.

The Insurance Company may cancel the Policy as of any Premium Due Date if the Participation Requirements are not met.

16

**Policy Grace Period**
A Policy Grace Period of 31 days will be granted for the payment of the required premiums under the Policy. The Policy will be in force during the Policy Grace Period. If the required premiums are not paid during the Policy Grace Period, insurance will end on the last Premium Due Date. The Policyholder will be liable to the Insurance Company for any unpaid premium for the time the Policy was in force.

**Reinstatement of Insurance**
Coverage may be reinstated if an Employee's insurance ends because he or she is on an unpaid leave of absence.

An Employee's coverage may be reinstated only if reinstatement occurs within 6 months from the date insurance ends due to an Employer approved unpaid leave of absence. For coverage to be reinstated the following conditions must be met.
1.     an Employee must be in a Class of Eligible Employees
2.     the required premium must be paid
3.     a written request for reinstatement must be received by the Insurance Company within 31 days from the date an Employee returns to Active Service

Reinstated coverage will be effective on the date the Employee returns to Active Service. If an Employee did not fully satisfy the Eligibility Waiting Period or the Pre-Existing Condition Limitation before coverage ended due to an unpaid leave of absence, credit will be given for any time that was satisfied.

TL-004720

# GENERAL PROVISIONS

**Entire Contract**
The Policy, the application of the Policyholder, a copy of which is attached to the Policy, the Policyholder endorsements, riders and attached papers constitute the entire contract between the parties. If an application of an Employee is required, it will also be made a part of the contract.

**Incontestability**
The validity of the Policy shall not be contested except for non-payment of premium after the Policy has been in force for two years from the date of issue.

All statements made by the Policyholder or by an Employee are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a signed copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the signed copy.

After two years from an Employee's effective date of coverage, or from the effective date of any added or increased benefits, no such statement will cause coverage to be contested except for fraud or eligibility for coverage.

## Misstatement of Age

If an Employee's age has been misstated, the Insurance Company will adjust all benefits to the amounts that would have been purchased for the correct age.

## Policy Changes

No change in the Policy will be valid until approved by an executive officer of the Insurance Company. This approval must be endorsed on, or attached to, the Policy. No agent may change the Policy or waive any of its provisions.

## Workers' Compensation Insurance

The Policy is not in lieu of and does not affect any requirements for coverage under any Workers' Compensation Insurance.

## Certificates

A certificate of insurance will be delivered to the Policyholder for delivery to Employees. Each certificate will list the benefits, conditions and limits of the Policy. It will state to whom benefits will be paid.

## Assignment of Benefits

The Insurance Company will not be affected by the assignment of an Employee's certificate until the original assignment or a certified copy of the assignment is filed with the Insurance Company. The Insurance Company will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. This insurance may not be levied on, attached, garnished, or otherwise taken for a person's debts. This prohibition does not apply where contrary to law.

## Conformity with State Statutes

Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

## Clerical Error

A person's coverage will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

TL-004726

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

CITY OF MENLO PARK

(herein called the Policyholder)

Group Policy No.: BK 20024                    Effective Date:   April 15, 1997

This Amendment will be in effect only for eligible employees in Active Service on the Effective Date shown above. If an Employee is not in Active Service on the date he would otherwise become eligible, he will become eligible on the date he returns to Active Service provided any required Waiting Period has been satisfied.

As of the Effective Date shown above, the Company and the Policyholder hereby agree that the Policy and any Certificates delivered under the Group Policy are amended as follows:

1) The "Monthly Benefits" provision under the Amounts of Insurance section of the **SCHEDULE OF BENEFITS FOR CLASS 1** page is changed to the following:

    *Monthly Benefits*        The lesser of 66.67% of an Employee's monthly Covered Earnings rounded to the nearer dollar or $6,500, reduced by any Other Income Benefits.

2) The **Initial Premium Rates** section of the **SCHEDULE OF BENEFITS FOR CLASS 1** page is changed to the following:

Initial Premium Rates

    $.870 per $100 of Covered Payroll

Covered Payroll for an Employee will mean his or her monthly earnings for the insurance month prior to the date the determination is made. However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $9,750.

Except for the above, this amendment does not change the Policy and Certificates in any way.

FOR THE COMPANY

By:

Date:  August 4, 1997

Amendment No. #2

TL-004780

LIFE INSURANCE COMPANY OF NORTH AMERICA
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

CITY OF MENLO PARK

(herein called the Policyholder)

Group Policy No.:   BK 020024                    Effective Date: July 1, 1999

This Amendment will be in effect only for insured Employees in Active Service on the Effective Date shown above.  If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy is amended as follows:

1.   The "Monthly Benefits" provision of the **Amounts of Insurance** section of the **SCHEDULE OF BENEFITS FOR CLASS 1** is replaced by the following:

*Monthly Benefits*                 The lesser of 66.67% of an Employee's monthly Covered Earnings rounded
                                   to the nearer dollar or $7,000, reduced by any Other Income Benefits.

2.   The definition of Covered Payroll in the **Initial Premium Rates** section of the **SCHEDULE OF BENEFITS FOR CLASS 1** is replaced by the following:

Coverd Payroll for an Employee will mean his or her monthly earnings for the insurance month prior to the date the determination is made.  However, an Employee's Covered Payroll will not include any part of his or her monthly Covered Earnings which exceed $10,500.

Except for the above, this amendment does not change the Policy in any way.

FOR THE COMPANY

By:

John K. Leonard, President

Date:   August 5, 1999

Amendment No. 3

**EXHIBIT B**

1  ADRIENNE C. PUBLICOVER (SBN 161432)
   MICHAEL K. BRISBIN (SBN 169495)
2  WILSON, ELSER, MOSKOWITZ,
       EDELMAN & DICKER LLP
3  525 Market Street, 17th Floor
   San Francisco, CA  94105
4  Telephone:    (415) 433-0990
   Facsimile:    (415) 434-1370
5
   Attorneys for Defendants
6  **LIFE INSURANCE COMPANY**
   **OF NORTH AMERICA**
7  **d.b.a. CIGNA GROUP INSURANCE**

8

9              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10                   **FOR THE COUNTY OF ALAMEDA**

11

12  DEBORAH VENTO,                    )  Case No.: RG08372873
                                      )
13          Plaintiff,                )  **NOTICE TO STATE COURT AND TO**
                                      )  **ADVERSE PARTY OF REMOVAL OF**
14      v.                            )  **ACTION TO FEDERAL COURT**
                                      )  **UNDER 28 U.S.C. Section 1441(a) & (b)**
15  LIFE INSURANCE COMPANY OF         )
    NORTH AMERICA d.b.a. CIGNA GROUP  )
16  INSURANCE; AND DOES 1 THROUGH 100,)  [Diversity, 28 U.S.C. Section 1332]
                                      )
17                                    )
          Defendants.                 )
18                                    )  Filing Date:    March 25, 2008
                                      )  Trial Date: N/A
19  _____)

20

21     **TO THE CLERK OF THE ALAMEDA COUNTY SUPERIOR COURT AND TO**

22  **ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

23          **PLEASE TAKE NOTICE THAT** on April 24, 2008, pursuant to 28 U.S.C. Sections

24  1332, 1441 and 1446, Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA

25  d.b.a. CIGNA GROUP INSURANCE ("LINA") filed a notice removing this action to the

26  United States District Court for the Northern District of California, Oakland Division.

27          A copy of the Notice of Removal filed by LINA is attached to this notice as **Exhibit A,**

28  and is served and filed herewith.

Defendant LINA'S Notice to State Court of Removal of Action to Federal Court
Case No.:  RG08372873
334453.1

1

2      PLEASE TAKE FURTHER NOTICE THAT, pursuant to 28 U.S.C. Section 1446(d),

3  the filing of the Notice of Removal in the United States District Court, together with the filing

4  of a copy of this notice with the Alameda County Superior Court, effects the removal of this

5  action, and the above-entitled State Court may proceed no further unless and until the case is

6  remanded.

7  Date: April 22, 2008                    WILSON, ELSER, MOSKOWITZ,
                                           EDELMAN & DICKER LLP
8

9                                          By: _____

10                                         ADRIENNE C. PUBLICOVER
                                           MICHAEL K. BRISBIN
11                                         Attorneys for Defendant
                                           **LIFE INSURANCE COMPANY**
12                                         **OF NORTH AMERICA**
                                           **d.b.a. CIGNA GROUP INSURANCE**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am a citizen of the United States, I am over the age of eighteen years not a party to the within cause; I am employed in the City and County of San Francisco, California and my business address is 525 Market Street, 17th Floor San Francisco, California 94105.

On this date I served the following document(s):

**NOTICE TO STATE COURT AND TO ADVERSE PARTY OF REMOVAL OF ACTION TO FEDERAL COURT UNDER 28 U.S.C. Section 1441(a) & (b)**

on the party(ies) identified below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

**XX:** **By First Class Mail** -- I caused each such envelope, with first class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U.S. Mail in San Francisco, California, for collection to the office of the addressee following ordinary business practices.

**____:** **By Personal Service** -- I caused each such envelope to be given to a courier messenger who personally delivered each such envelope to the office of the addressee.

**____:** **By Overnight Courier** -- I caused each such envelope to be given to an overnight mail service at San Francisco, California, to be hand delivered to the office of the addressee on the next business day.

**____:** **Facsimile** -- (Only where permitted. Must consult CCP §1012.5 and California Rules of Court 2001-2011. Also consult FRCP Rule 5(e). Not currently authorized in N.D.CA.)

| | |
|---|---|
| Timothy J. Fricker, Esq.<br>James G. Mellen, Esq.<br>Fricker & Mellen & Associates<br>Tribune Tower<br>409 13th Street, 17th Floor<br>Oakland, CA  94612<br>Tel: (510) 663-8484<br>Fax: (510) 663-0639<br>*Attorneys for Plaintiff*<br>*DEBORAH VENTO* | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

EXECUTED April 24, 2008, at San Francisco, California.

Joya Yeung